**ROBERTS v. SIMMS et al.**
**Civ. No. 1022.**

United States District Court
S. D. Florida, Tampa Division.
May 18, 1949.

Hampton, Bull & Crom, Tampa, Fla., for plaintiff.

William C. Brooker, Tampa, Fla., Charles F. Blake, Tampa, Fla., for defendants.

DE VANE, District Judge.

Plaintiff, Charles E. Roberts, doing business as Roberts Supply Company, brought suit against A. J. Simms, individually and Simms and others, as the last known Directors and Trustees of Tampa Developers, Inc., a dissolved corporation, to re-

cover $21,815.18, with interest from February 18, 1927, alleged to be the balance due plaintiff on a contract between plaintiff and Tampa Developers, Inc., for the construction of a highway bridge known as "Michigan Avenue Bridge" over the Hillsborough River in the City of Tampa, Florida.

The complaint alleges, and in fact the parties admit, that on September 25, 1925, plaintiff entered into a contract with Tampa Developers, Inc., for the construction of said bridge for a total sum of $285,000 and that on the same day A. J. Simms, who was President of Tampa Developers, Inc., "did covenant and agree in and by a written instrument signed under his seal, in person" to guarantee the payment by said corporation for the work of plaintiff in the construction of said bridge. Simms promoted Tampa Developers, Inc. and was its largest stockholder.

The suit was dismissed as to all the last known Directors and Trustees of Tampa Developers, Inc. and proceeded to final conclusion only against A. J. Simms, individually, upon his guaranty.

Of the several defenses interposed by Simms, individually, only two remained at the first trial of the case, which are as follows:

1. That after the claim asserted by plaintiff against defendant had accrued, and prior to the commencement of this action, a Petition in Bankruptcy was duly filed in the United States District Court, in and for the Southern District of Florida and in such proceedings an Order was duly entered and filed in said Bankruptcy proceedings, under date of October 2, 1930, whereby defendant Simms was duly discharged of all his debts, including the one stated in the complaint herein, and

2. That after entering into the contract of guaranty and before the commencement of this action defendant caused the Tampa Developers, Inc. to execute and deliver to plaintiff a first mortgage upon 73 lots owned by the Tampa Developers, Inc. in Michigan Park Subdivision, of a value of $100,000 or more, which mortgage was delivered to and accepted by plaintiff in full accord and satisfaction of the claim against defendant stated in the complaint.

No jury was demanded by either party, pursuant to the Federal Rules of Civil Procedure for the District Court of the United States, 28 U.S.C.A., and no motion was made by either party for a trial by jury. Notwithstanding this, however, and over the objection of counsel for plaintiff, the court ordered a trial by jury and the jury returned a verdict for the defendant. Counsel for plaintiff filed a motion for a new trial and among the grounds for said motion assigned the error of the court in submitting the case to a jury on its own motion, without a demand or motion by either party to the litigation and over the objection of plaintiff and the court ordered a new trial upon this ground alone.

Following the entry of the order for new trial, the parties to this action, through counsel, entered into a stipulation for a trial of this case before the court without a jury, upon the record made at the trial of the case before a jury, and the case came on for hearing before the court, without a jury, on April 21, 1949.

At the trial of this case before a jury the court held and instructed the jury that defendant failed to sustain his plea of discharge through bankruptcy and the correctness of this ruling of the court upon that issue was conceded by counsel for defendant at the trial before the court. Therefore, the only issue raised by the pleadings that is before the court now is the plea of accord and satisfaction interposed by defendant, Simms.

The testimony bearing upon this issue is briefly summarized as follows:

The contract between plaintiff and Tampa Developers, Inc., was entered into during the latter days of the Florida Real Estate Boom of the 1920s. Before the construction of the bridge was anyway near completed the Florida Real Estate Boom had come to an end and Tampa Developers, Inc. and A. J. Simms were in financial difficulty and plaintiff testified that he stopped construction work on the bridge until more satisfactory financial arrangements could be worked out.

Faced with this financial difficulty, Tampa Developers, Inc. worked out an

arrangement with the City of Tampa under which the City agreed to contribute $150,000 towards the construction of the bridge and Tampa Developers, Inc. offered plaintiff a mortgage on 73 lots in Michigan Park Subdivision as security for the balance due it by and under its contract with plaintiff.

Plaintiff accepted these financial arrangements and proceeded with the construction of the bridge. The mortgage given plaintiff covering the 73 lots bears date of June 22, 1926. The agreement between Tampa Developers, Inc. and the City of Tampa bears date of June 23, 1926. Under this latter agreement the City of Tampa bound itself to contribute $150,000 towards the construction of the bridge and Tampa Developers, Inc. was to remain liable for the balance.

While, as stated above, this agreement is dated the day following the date which the mortgage bears, the mortgage recites as one consideration for accepting it the fact that the City of Tampa "has agreed to pay to mortgagee the sum of $150,000 of said contract price." This reference in the mortgage to the agreement between Tampa Developers, Inc., and the City of Tampa is proof positive that these arrangements were simultaneously perfected to meet the more satisfactory financial arrangement demanded by plaintiff when he ceased work on the bridge.

During the negotiations leading to the perfection of the financial arrangement referred to above, considerable correspondence was exchanged between plaintiff and defendant, which was introduced in evidence in this case. None of this correspondence makes any reference to the guaranty sued upon in this case and the record is entirely void of any showing by plaintiff that he, at any time prior to the institution of this suit, made any demand upon defendant to make good on his guaranty. Plaintiff testified that he had no recollection that the guaranty was ever discussed between him and defendant during or subsequent to these negotiations.

Defendant testified that when it appeared to him and the other stockholders of Tampa Developers, Inc., that the corporation was headed for serious financial difficulty he called plaintiff and the one other substantial creditor of the company to his office and offered them all the free assets of the corporation as security for their indebtedness. He testified it was at this conference that the mortgage on the 73 lots in Michigan Park Subdivision was offered to plaintiff. Defendant offered to J. L. Cone, the other large creditor present at the conference, all unpledged notes and mortgages of the corporation. Cone testified he accepted the collateral offered him, and while plaintiff did not do so at the time, the record shows that he also finally accepted that offered him, although it was not accepted until after the City of Tampa had agreed to pay $150,000 of the contract price.

Defendant further testified that at the conference, referred to above, one of the conditions attached to the giving of the mortgage on the 73 lots was that defendant was to be released from his guaranty. Witness Cone testified he recalled a conversation between plaintiff and defendant with reference to the guaranty, but not being interested therein he paid no attention to it and had no recollection concerning the substance of the conversation.

The testimony of plaintiff and defendant being in conflict as to whether plaintiff ever agreed to release defendant of his guaranty, it becomes necessary to look to corroborative evidence in the record to determine the issue. Plaintiff testified that while the bridge was under construction, and almost from the beginning of construction, he experienced considerable difficulty in collecting the periodical payments due by Tampa Developers, Inc.; that he made frequent demands upon Tampa Developers, Inc. for such payments, but that he never made any demand upon defendant under his guaranty for any payment due, and that all payments made to him, outside of those received from the City of Tampa, were made by Tampa Developers, Inc. The testimony of witness, Cone, that the guaranty was discussed at the conference at which defendant offered plaintiff a mortgage on all the unincumbered property owned by Tampa Developers, Inc. as security for the indebtedness due plaintiff by Tampa Developers, Inc. is further corroborative evidence on this point.

Defendant Simms testified plaintiff was well aware of his personal financial condition at the time the mortgage was given; that it was discussed between them on many occasions and the fact that defendant went into bankruptcy shortly after the completion of the bridge, the foreclosure of the mortgage and the sale of the lots secured thereby, to plaintiff, and failed to schedule as an indebtedness the amount here claimed by plaintiff is further corroborative evidence that an accord and satisfaction had been agreed upon between plaintiff and defendant.

The conduct of plaintiff from the day the guaranty was given him by defendant, plus the additional corroborative circumstances outlined above, clearly supports defendant's plea that an accord and satisfaction had been agreed upon between the parties long prior to the institution of this suit. The testimony in this case clearly supported and justified the verdict of the jury, rendered at the trial of the case before a jury, and the court finds and holds, from the preponderance of the evidence in this case, that plaintiff did agree with defendant to relieve and discharge him on his guaranty.

A Judgment will be entered in conformity with this Memorandum Decision, in favor of defendant.